IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID RYAN and ANNA MAE RYAN,<br><br>    Plaintiffs,<br><br>v.<br><br>REXWORKS, INC., et al.,<br><br>    Defendants. | CIVIL NO. 06-5866(NLH)<br><br>OPINION |

**APPEARANCES:**

Randy P. Catalano, Esquire
216 Haddon Avenue
Suite 100
Westmont, NJ 08108

    Attorney for Plaintiffs

Alexander John Anglim, Esquire
David Jay, Esquire
Greenberg Traurig LLP
200 Park Avenue
P.O. Box 677
Florham Park, NJ 07932-0677

    Attorneys for Trinity Industries, Inc., Transit Mix Concrete
    & Materials Company, Temco

Daniel J. Hart, Esquire
Joseph R. Bonfig, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin, Esqs.
Woodland Falls Corporate Park
200 Lake Drive East, Suite 300
Cherry Hill, NJ 08002-3405

    Attorneys for McNeilus Truck & Manufacturing, Oshkosh Truck
    Corporation

**HILLMAN**, District Judge

This case involves plaintiffs' claims arising out of David Ryan's fall from a ladder that came unattached from a cement truck.  Pending before the Court are the motions of defendants Oshkosh Truck Corporation and McNeilus Truck & Manufacturing ("Oshkosh/McNeilus" defendants) and Trinity Industries, Inc., Transit Mix Concrete & Materials Company and Temco ("Trinity" defendants) to dismiss plaintiffs' claims.  These motions involve the application of "relation-back" principles with regard to the substitution of John Doe defendants after the expiration of the applicable statute of limitations.  Also before the Court is plaintiffs' cross-motion for summary judgment as to Oshkosh/McNeilus' and Trinity's successor liability for defendant Rexworks, Inc.  For the reasons expressed below, all motions will be denied.

## BACKGROUND

Plaintiff David Ryan claims that he fell from a ladder that came unattached from a cement truck on December 2, 2003 while Mr. Ryan was on the job with his employer R.E. Pierson Construction Company, Inc.  Mr. Ryan has since been declared totally disabled, and has never returned to work at R.E. Pierson.

On November 18, 2005, plaintiffs filed their original complaint in New Jersey Superior Court against defendant T.L. Smith, believing that it was the manufacturer of the cement

mixer, and various John Doe fictitious entities pursuant to N.J. Rules of Civil Procedure 4:26-4.  On April 27, 2006, plaintiffs' counsel received a telephone call from a former vice-president of T.L. Smith informing him that T.L. Smith had been sold to Trinity Industries.  No answer or appearance having been filed by T.L. Smith, plaintiffs filed an amended complaint on May 5, 2006 substituting Trinity Industries, Inc. and Transit Mix Concrete as successors-in-interest of T.L. Smith for two of the John Doe defendants.  Plaintiffs sent a notice of claim to these new entities, but did not receive a response.

Plaintiffs then engaged an investigator to determine the proper corporate name of the entities which purchased T.L. Smith.  On October 9, 2006, the investigator discovered that T.L. Smith was purchased by Trinity Industries, Inc., was then passed to the entity Temco, and then to McNeilus Truck & Manufacturing, and then again to Oshkosh Truck Corporation.[1]  On October 25, 2006, Plaintiffs filed a second amended complaint, adding these new entities as defendants.  The amended complaint was served onto these new defendants in the beginning of November 2006.

The case was removed by the Trinity defendants to this Court on December 7, 2006.  Since that time, various discovery has

---

[1] It appears that this occurred as a result of consecutive corporate acquisitions or mergers rather than the separate sale of T.L. Smith between different buyers.

3

taken place with regard to the statute of limitations issues, including the deposition of plaintiffs, as well as plaintiffs' counsel.  Also since then, plaintiffs inspected the cement mixer for the first time.  On June 6, 2007, plaintiffs inspected the cement mixer and determined that it was a Rexworks, Inc. mixer, and not a T.L. Smith product.  As a result, plaintiffs' counsel performed an initial internet search when he returned to his office that day and discovered that Rexworks, Inc. was no longer involved in the manufacture of cement mixers.  On June 11, 2007, plaintiffs' counsel sent a letter to defendants' counsel informing them of this information.

Over the course of the next month, which included conferences with Magistrate Judge Donio and plaintiffs' requests to defense counsel to determine whether defendants were involved in the purchase of Rexworks, it was determined by plaintiffs' investigator that Trinity had purchased Rexworks, Inc.'s assets in 2000.  On July 20, 2007, this was confirmed by counsel for the Trinity defendants, who provided plaintiffs' counsel with a copy of the asset purchase agreement between Trinity/Temco and Rexworks.

Previously, plaintiffs had moved to file a third amended complaint in order to substitute the manufacturer of the cement truck, Rexworks, for a John Doe defendant.  Because the statute

4

of limitations for plaintiffs' claims expired on December 2, 2005, plaintiffs sought to have this amendment to relate back to their original complaint, which was filed on November 18, 2005. Plaintiffs argued that they were permitted to do this pursuant to Federal Civil Procedure Rule 15(c) and New Jersey Civil Rules 4:26-4[2], 4:9-1[3], and 4:9-3[4]. Defendants opposed plaintiffs' motion, and cross-moved for summary judgment on statute of limitations grounds. Oral argument was held, and on March 26, 2008, the Court granted plaintiffs' motion to amend. The Court also denied defendants' motions for summary judgment, but permitted defendants to renew their motions within thirty days of the filing of plaintiffs' third amended complaint. Defendants have now done so, and plaintiffs have opposed these motions. Plaintiffs have also filed a cross-motion for summary judgment on the issue of the successor liability of the Oshkosh/McNeilus and Trinity defendants. Defendants have opposed plaintiffs' motion.

---

[2] N.J. Civil R. 4:26-4 governs the use of fictitious names in *in personam* actions.

[3] N.J. Civil R. 4:9-1, similar in language and intent to Fed. R. Civ. P. 15(a), governs when amendments to pleadings may be made.

[4] N.J. Civil R. 4:9-3, similar in language and intent to Fed. R. Civ. P. 15(c), governs when amendments to pleadings relate back.

**DISCUSSION**

**A.   Jurisdiction**

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

**B.   Analysis**

   **1.   *Defendants' motions to dismiss/summary judgment***

This is the second time in this case that the Court has been tasked to consider plaintiffs' due diligence in identifying the proper defendants, as well as the application of "relation-back" principles with regard to the substitution of John Doe defendants after the expiration of the applicable statute of limitations. In their opposition to plaintiffs' motion to amend, and in their current motions, defendants' primary basis for why they should be dismissed from the case is plaintiffs' counsel's delay in identifying the manufacturer of the cement mixer. Defendants argue that plaintiffs' counsel had plenty of time to view the cement mixer to determine its manufacturer, and that his delay is without sufficient excuse or explanation. Accordingly, defendants contend that plaintiffs' claims against them are barred by the statute of limitations.

Plaintiffs counter by arguing that the delay in identifying the correct manufacturer was due to numerous factors, including the various corporate mergers and acquisitions of the various defendants.  Plaintiffs argue that they employed the proper due diligence in determining the manufacturer of the cement mixer, and, recognizing the often complicated process of identifying the proper entity to sue in product liability cases, plaintiffs protected their interests by properly pleading John Doe defendants in accordance with New Jersey law.  Finally, plaintiffs argue that overriding all other considerations is the fact that Rexworks is now a named defendant in this action, and plaintiffs have alleged that defendants are successors-in-interest to Rexworks.  To have plaintiffs claims stand solely against a defunct entity, when defendants, which are alleged to have successor liability, are already in the case, would be an untenable result.

Taking a step back to when defendants first advanced their argument about undue delay and plaintiffs' lack of due diligence, in the previous Order granting plaintiffs' motion to amend their complaint to substitute Rexworks for a John Doe defendant, the Court noted that defendants were arguing "that because the correct maker of the cement mixer was identified after the expiration of the statute of limitations, plaintiffs' claims

7

against Rexworks should be time-barred, and because plaintiffs' claims against Rexworks are time-barred, their claims against them are time-barred as well." (March 26, 2008 Order at 2.) The Court also noted that Amendments to pleadings are governed by Federal Civil Procedure Rule 15, which provides that the Court "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), and that an amendment must be permitted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment, Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). (Id. at 3) The Court then found that there was no showing by Rexworks of undue delay, bad faith, dilatory motive, unfair prejudice, or futility--obviously because it is a defunct entity. (Id.) The Court also found that because neither the Oshkosh/McNeilus defendants nor the Trinity defendants stated that they had standing to assert the claims and defenses of Rexworks, or to assume the liabilities of Rexworks, they had no legal basis to challenge Rexworks' addition at that time. Accordingly, the Court concluded that because the Trinity defendants had not stated any relationship with Rexworks, it could not base its motion to dismiss on the premise that if the claims against Rexworks fail, they must also fail against them. (Id. at 3-4.)

8

In their instant motions, defendants again do not concede or deny that they are successors-in-interest to Rexworks. Instead, they focus on plaintiffs' dely in identifying them, and argue that the addition of them as defendants after the expiration of the statute of limitations is not permitted by New Jersey's ficitious pleading rule because plaintiffs did not employ the proper due diligence.

Defendants' argument is unavailing. As a primary matter, defendants are not raising their argument in opposition to plaintiffs' motion to amend their complaint to substitute them for John Doe defendants. It is unclear what transpired in state court prior to the removal of the case to this Court, but when the case was removed, the Oshkosh/McNeilus and Trinity defendants had already been substituted. The bases for defendants' motions are New Jersey Civil Procedure Rule 4:26-4 and Federal Civil Procedure Rule 15, both of which deal with amendments to pleadings to add new defendants. Because defendants are already added to the case, whether or not it was proper for these defendants to be substituted is not before this Court.

Defendants' argument is also unavailing because plaintiffs have shown that they acted with the sufficient amount of diligence with regard to identifying the proper defendants and amending their complaint. Under New Jersey law, diligence is a

9

three-step process. First, plaintiffs have an obligation to diligently investigate and determine the identity of potentially liable parties prior to the filing of the initial complaint. <u>Cardona v. Data Systems Computer Centre</u>, 618 A.2d 864, 864 (N.J. Super. Ct. App. Div. 1992). That obligation continues after the complaint has been filed. <u>Mears v. Sandoz Pharmaceuticals, Inc.</u>, 693 A.2d 558, 562 (N.J. Super. Ct. App. Div. 1997) (explaining that "[b]esides acting with diligence to determine the identity of an unknown defendant prior to the running of the statute of limitations, a plaintiff must also act with diligence to determine an unknown defendant's identity after properly using R. 4:26-4 in filing his or her original complaint"). Finally, once the fictitious defendant has been identified, plaintiff must promptly move to amend the complaint. <u>Johnston v. Muhlenberg Regional Medical Center</u>, 740 A.2d 1122, 1125 (N.J. Super. App. Div. 1999).

The New Jersey Supreme Court has not provided a standard definition of diligence, since "'the meaning of due diligence will vary with the facts of each case.'" <u>DeRienzo v. Harvard Industries, Inc.</u>, 357 F.3d 348, 354 (3d Cir. 2004) (quoting <u>O'Keefe v. Snyder</u>, 416 A.2d 862, 873 (N.J. 1980)) (citing <u>Seaman v. Monmouth County</u>, 15 N.J. Misc. 249, 191 A. 103, 104 (1935) ( "[W]hat is due diligence must be determined on the facts of each

particular case.")). In the context of N.J. Ct. R. 4:26-4, plaintiffs must "investigate all potentially responsible parties in a timely manner" to cross the threshold for due diligence. Id. (citing Matynska v. Fried, 811 A.2d 456, 457 (N.J. 2002).

The key inquiry with regard to a plaintiff's diligence is whether the defendant has been prejudiced by the delay in its identification as a potentially liable party and service of the amended complaint. Claypotch v. Heller, Inc., 823 A.2d 844, 848 (N.J. Super. Ct. App. Div. 2003) (citing Farrell, 299 A.2d at 400 (stating that an action, "though brought years later, may be held timely on a proper balance of considerations of individual justice and repose . . .; and it may be held timely on a similar balance where, as here, the plaintiffs in good faith brought their action expeditiously against the manufacturer under a fictitious name, identified it by amendment as soon as they discovered its true name, and served the amended complaint diligently thereafter. . . . Justice impels strongly towards affording the plaintiffs their day in court on the merits of their claim; and the absence of prejudice, reliance or unjustifiable delay, strengthens the conclusion that this may fairly be done in the matter at hand. . . .").

Here, within the applicable statute of limitations for plaintiffs' state law claims, plaintiffs filed their action

11

against T.L. Smith and John Does 1-10 fictitious defendants which "designed, manufactured, sold, and/or distributed the cement mixer and/or its component parts including the pull down ladder prior to December 2, 2003." (Compl. § 2, First Count.) Plaintiffs allege that all defendants, including the John Doe defendants, are liable jointly, severally, or in the alternative. (Id. § 4, First Count.) Plaintiffs also claim that the John Doe defendants are "fictitious names for individuals, partnerships and/or corporations who were parents, subsidiaries and/or successors in interest to defendants, T.L. Smith and/or John Does 1-10." (Id. § 2, Second Count.)

As thoroughly detailed in plaintiffs' counsel's certifications and set forth above, plaintiffs' counsel has explained how the identity of the maker of the cement mixer was first identified as T.L. Simth, and then as Rexworks. Plaintiffs' counsel has also explained that due to his experience in this area of the law, where the identities of manufacturers are not readily identifiable due to various reasons, including mergers and acquisitions, he included claims against John Doe defendants, as well as the successors-in-interest to T.L. Smith and the John Doe defendants. That strategy proved to be appropriate, because, presumably based on N.J. R. 4:26-4, when plaintiffs' counsel determined that the Trinity defendants were

successors-in-interest to T.L. Smith, and then the Oshkosh/McNeilus defendants were determined to be successors-in-interest to the Trinity defendants, plaintiffs' counsel immediately amended his complaint to substitute those defendants for the John Doe successors-in-interest defendants named in plaintiffs' complaint.

Defendants argue that because plaintiffs' counsel could have viewed the cement mixer, and thus easily identified Rexworks as the manufacturer of the mixer prior to the expiration of the statute of limitations, he should have named the correct defendants from the beginning. Even if that were true, it is equally true that this case would have ended up, at least with regard to parties, in exactly the same place. It appears based on the allegations in plaintiffs' complaint--claims that defendants do not admit or deny--that Oshkosh is a successor-in-interest to McNeilus, which is a successor-in-interest to the Trinity defendants, which is a successor-in-interest to Rexworks. If plaintiffs would have simply named Rexworks in their original complaint, plaintiffs would have eventually sought to add Oshkosh, McNeilus, and the Trinity defendants based on successor liability principles. Because Rexworks is now a named defendant, the fact that plaintiffs identified and added as defendants the successors-in-interest prior to the identification and addition

13

of Rexworks is of no practical importance with regard to the issue of plaintiffs' diligence in adding the Oshkosh/McNeilus and Trinity defendants.

Despite defendants' scolding of plaintiffs' counsel for not identifying the manufacturer of the cement mixer until July 2007, all the evidence on the record demonstrates that plaintiffs' counsel acted diligently and in good faith in a case where companies have merged again and again, and where all the parties were proceeding under the mistaken presumption that the cement mixer was made by T.L. Smith. New Jersey Court Rule 4:26-4 and Federal Rule 15(c) anticipate and ameliorate such situations.

Defendants contend, however, that they are prejudiced by the delay. They claim that "there is little question that the defendants will be prejudiced due to loss of evidence." (Def. Br. at 18.) Defendants complain that the witnesses' recollections will be less sharp, and defendants will have to start collecting key testimony years after the events, when memories have faded. Defendants also complain that due to the passage of time, there may be the loss of maintenance and repair records, physical changes to the mixer, and other issues affecting their ability to develop accurate information regarding the cause of Mr. Ryan's fall.

14

While this may be the case, defendants share at least that portion of delay from the time frame in 2006 when they became aware of this case.  Because the Oshkosh/McNeilus defendants have been in the case since at least November 2006, they have had since that time to identify on their own the manufacturer of the cement mixer, preserve evidence, and question witnesses.  They are defendants in this action, and since no later than November 2006 they have had a duty to conduct their own defense.  If plaintiffs have been dilatory in developing facts, interviewing witnesses, and otherwise preserving testimony as defendants claim, that delay prejudices plaintiffs' own case.  Defendants, however, have had the opportunity and ability to do exactly what they claim plaintiffs have failed to do since the time they were brought into this case.  Accordingly, defendants have failed to demonstrate how plaintiffs' delay in identifying them and adding them as defendants a year after filing their original complaint has prejudiced them.[5]

---

[5]   Absent from the defendants' oppositions is an explanation of why the Trinity defendants or the Oshkosh/McNeilus defendants did not inspect the cement mixer themselves after they were served with the complaint.  Even though it is plaintiffs' burden to prove their case, it would have been in defendants' interest to properly identify the manufacturer of the mixer to determine if they were liable or not.  If defendants did inspect the mixer prior to plaintiffs, and knew that Rexworks was the manufacturer and did not inform plaintiffs of its true identity, they cannot now use that information as a sword to defeat their presence in the case.

Informing the analysis above, when the Court permitted plaintiffs to add Rexworks as a defendant, it affirmed the propriety of plaintiffs' diligence. The Court did not allow plaintiff to add the manufacturer of the cement mixer in contemplation that a defunct entity would serve as the only defendant while the presumptive successors-in-interest to Rexworks would be dismissed from the case based on the same conduct of plaintiffs that was deemed sufficient to include Rexworks. To hold otherwise would be completely incongruous and place this case in an untenable posture. Accordingly, defendants' motions to dismiss/for summary judgment must be denied.

> 2.  ***Plaintiffs' motion for summary judgment on defendants' successor-in-interest liability***

Corollary to the defendants' presence in this case with regard to the due diligence issue is whether defendants are the proper parties based on successor-in-interest liability principles. Plaintiffs have moved for summary judgment on this issue. Plaintiffs contend that the asset purchase agreement between Trinity and Rexworks makes it clear that Trinity is the successor-in-interest to Rexworks, and that the asset purchase agreement between Trinity and Oshkosh makes it clear that Oshkosh is the successor to Trinity and Rexworks. Under these asset purchase agreements, Trinity purchased all of Rexworks' assets,

16

and then Oshkosh purchased all of Trinity's assets, which included Rexworks' assets. Based on the purchase of Rexworks assets, plaintiffs argue that both Trinity and Oshkosh continued on the Rexworks product line, and are therefore both liable on successor-liability principles.

Defendants argue that plaintiffs' motion is premature because the successor liability issue cannot be decided on the basis of the asset purchase agreements alone, and discovery must ensue prior to a determination of whether defendants are actually successors-in-interest and, if they are, whether they could be held liable for plaintiffs' alleged injuries.

The Court agrees with defendants that the issue of successor liability is not yet ripe for determination. Even though on their face, the asset purchase agreements indicate that defendants purchased all of Rexworks assets, that fact alone is not sufficient to establish successor liability for plaintiffs' alleged damages. Under New Jersey corporate law, "'where one company sells or otherwise transfers all its assets to another company'" the traditional approach was that "'the latter is not liable for the debts and liabilities of the transferor, including those arising out of the latter's tortious conduct.'" <u>Colman v. Fisher-Price, Inc.</u>, 954 F. Supp. 835, 838 (D.N.J. 1996) (quoting <u>Ramirez v. Amsted Indus., Inc.</u>, 431 A.2d 811, 816 (N.J. 1981)). There were four exceptions to this general rule, however. Those exceptions called for transferee liability "'where (1) the

17

purchasing corporation expressly or impliedly agreed to assume such debts and liabilities; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is entered into fraudulently in order to escape responsibility for such debts and liabilities.'" Id. (quoting Ramirez, 431 A.2d at 816).

The New Jersey Supreme Court analyzed the traditional successor liability approach and criticized it as "'unresponsive to the legitimate interests of the products liability plaintiff.'" Id. (quoting Ramirez, 431 A.2d at 816). The court therefore substantially adopted the "product line" analysis that had been developing in California case law. Id. (quoting Ramirez, 431 A.2d at 819). The court held,

> [W]here one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor. The social policies underlying strict products liability in New Jersey are best served by extending strict liability to a successor corporation that acquires the business assets and continues to manufacture essentially the same line of products as its predecessor, particularly where the

18

>     successor corporation benefits from trading its product
>     line on the name of the predecessor and takes advantage
>     from its accumulated good will, business reputation and
>     established customers.

Ramirez, 431 A.2d at 824-25).

Here, because discovery has not taken place, plaintiffs have not provided any evidence that defendants have continued to "manufacture essentially the same line of products as its predecessor," and have benefitted "from trading its product line on the name of the predecessor."[6] Because this case is proceeding past the motion to dismiss stage, plaintiffs may engage in the normal course of discovery, and may renew their motion on the successor liability issue if they obtain facts to

---

[6] Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

Plaintiffs state in their reply that instead of arguing that plaintiffs have not submitted proof to support their product line theory of liability, "why don't defendants simply submit the requisite proof on this issue instead of keeping the court and counsel in suspense." (Pl. Reply at 1.) Although this sentiment would be warranted if defendants were moving for summary judgment on the successor liability issue, it is plaintiffs' burden on their summary judgment motion to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To do so, plaintiffs--not defendants--must provide evidence to support their claims.

support their "product line" theory of liability.  At this time, however, plaintiffs' motion is premature, and, accordingly, must be denied.

## **CONCLUSION**

For the reasons expressed above, defendants' motions to dismiss/for summary judgment will be denied, and plaintiffs' cross-motion for summary judgment will also be denied.  An appropriate Order will be entered.


Date: August 26, 2008                s/ Noel L. Hillman

At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.